THOMPSON, Presiding Judge.
Amanda Kimbrell (“the mother”) has filed a petition for a writ of mandamus seeking relief from the February 10, 2015, order of the Walker Circuit Court (“the trial court”) that determined that Denny Kimbrell. (“Kimbrell”) was the father, of the child born when the mother and Kim-brell were in a-relationship and scheduled the action for a hearing on Kimbrell’s claim seeking custody of the child.
Initially, we note that a petitioner seeking a writ of mandamus bears a high burden of proof.
“The writ of mandamus is an extraordinary remedy; it will not be issued unless the petitioner shows ‘ “ ‘(1) a clear legal ■right in the' petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the-lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” ’ Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000) (quoting Ex parte Gates, 675 So.2d 371, 374 (Ala.1996)); Ex parte Pfizer, Inc., 746 So.2d 960, 962 (Ala.1999).”
Ex parte■ Children’s Hosp. of Alabama, 931 So.2d 1, 5-6 (Ala.2005).
The only material submitted in support of the mother’s petition for a writ of mandamus is the February 10, 2015, order at issue, which sets forth the relevant facts and the trial court’s legal determinations as follows:
“1. [The mother and Kimbrell] filed the typical uncontested answer and waiver for a divorce on June 23,'2014. The parties entered into a settlement agreement concerning their alleged mar *32 ital differences on that same date, which was filed with the Court on July 7, 2014.
“2. Also, on July 7, 2014, [the mother] filed a Motion To Set Aside Settlement Agreement.
“3. On July 11, 2014, [the mother] filed a Motion To Dismiss the complaint for divorce as she claims her marriage to [Kimbrell] was void because her prior marriage to Jonathan Herbert was never terminated by divorce, annulment, or death.
“4. On July 16, 2014, [Kimbrell] filed an amended answer to [the mother’s] original complaint, and a counterclaim which, among other things, requested an annulment of the marriage and custody of the parties’ minor child. [The mother] filed an answer to [Kimbrell’s] counterclaims asserting a general denial and denying all jurisdictional issues.
“6. On January 5, 2015, [Kimbrell] filed a Petition To Determine Paternity. It is important to note that in the petition, [Kimbrell] is not seeking genetic testing to disprove paternity, but rather is seeking genetic testing to prove that he is the biological father of the parties’ minor child.
“6. This matter was tried on January 12, 2015.
“7. The only parties to this action were [the mother] and [Kimbrell]. John Herbert, a potential presumed father and nonresident of this state, never was a party to or intervened in this cause. This Court lacks jurisdiction over him as none of the bases for jurisdiction over a nonresident set forth in § 30-3A-201, Ala.Code 1975, exist.1

“FINDINGS OF FACT

“1. According to trial testimony, [the mother] married John Herbert on August 20,1996, in Belleville, Illinois.
“2. Sometime in 1997, [the mother] left John Herbert without divorcing him and returned to Alabama. [The mother] had not seen John Herbert since leaving him in 1997 until sometime in June 2014, after filing her complaint for divorce [from Kimbrell].
“3. [The mother] did have a telephone conversation with John Herbert in 1997 in which she understood he would file all appropriate legal documents to obtain a divorce from her. John Herbert testified that he never filed for divorce, nor did he obtain a marriage annulment from any court.
“4. [The mother] introduced numerous letters from the various circuit court clerks of the counties and states in which either she or John Herbert had resided since 1996 that no proceedings were ever filed to terminate the marriage by divorce or annulment. Based on the trial testimony and these documents, it is undisputed that [the mother’s] marriage to John Herbert on August 20, 1996, was never terminated by divorce, annulment, or death.
“5. Trial testimony further showed that the parties to this cause began living with each other in approximately 2004.
“6. During the course of this relationship the parties engaged in sexual intercourse.
“7. On February 24, 2006, a child ... (hereinafter the ‘minor child’) was born of [the mother]. The birth certificate lists [Kimbrell] as the father of the child. The child was born in Walker County, Alabama.
“8. It is undisputed that [Kimbrell] was present at the hospital for the child’s birth, received the child into his home immediately after the child’s birth, and the child continuously lived with [Kimbrell] and [the mother] in [Kim- *33 brell’s] home for the past eight (8) years. During this time, [Kimbrell] believed and openly held out the child to be his natural born child. The child has only been separated from [Kimbrell] since [the mother’s] filing of her complaint for divorce. It was further undisputed that [Kimbrell] provided both emotional and financial support for the child.
“9. Approximately 7 months after the birth of the minor child, [the mother] and [Kimbrell] were ceremoniously married to each other on September 22, 2006. The parties’ Certificate of Marriage is on file in the Probate Judge’s Office of Walker County, Alabama, and was introduced at trial.
“10. At all times pertinent to this cause and since the birth of the minor child, the minor child has resided with the parties in Walker County, Alabama.
“11. This Court takes judicial notice that it has previously entered an order in this matter requiring [Kimbrell] to pay child support to [the mother] for the parties’ minor child.
“NOW, THEREFORE, based on the pleadings of the parties and the facts and evidence presented at trial it is ORDERED, ADJUDGED, and DECREED as follows:
“1. [The mother’s] Motion To Set Aside Settlement Agreement is hereby GRANTED and said settlement agreement is deemed void and of no force and effect.
“2. The marriage between [the mother] and [Kimbrell] is hereby ANNULLED and the marriage between [the mother] and [Kimbrell] is deemed void, ab initio.
“3. As a result of annulling the marriage between the parties, [the mother’s] Motion To Dismiss the complaint is hereby deemed MOOT.
“4. Further, [the mother] testified during trial that she is not seeking an interest in any property acquired during the cohabitation and attempted marriage of the parties. Therefore, all right, title, and interest in all property acquired by [Kimbrell] before and during the cohabitation and attempted marriage of the parties is hereby fully vested in [Kim-brell], and [the mother] is hereby divested of any right, title or interest therein.
“5. [Kimbrell’s] Petition To Determine Paternity is hereby GRANTED and [Kimbrell] is hereby found and determined to be the father of the parties’ minor child, ... pursuant to Sections 26 — 17—204(a)(4)(B) & (C) and 26-17-204(a)(5), Ala.Code 1975. The Court makes note that [the mother] appeared to be arguing on behalf of John Herbert, her husband whom she had been estranged from since 1997, that he is the weightier ‘presumed father’ of the minor child in an effort to disprove paternity in [Kimbrell]. This argument is disallowed under § 26-17-607(a), Ala.Code 1975, which states, in pertinent part, ‘If the presumed father ([Kimbrell] in this case) persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.’ Further, it is noted that John Herbert, by his own testimony, could not be the biological father of the minor child, nor has he been involved in the minor child’s life since her birth. It is clear from the testimony and evidence that [Kimbrell] has been the only father the minor child has known since her birth.
“6. [Kimbrell’s] request for genetic testing contained in his Petition To Determine Paternity is hereby DENIED as this Court has determined that he is the presumed father of the minor child and no other person has sought to be declared the father of the minor child.
*34 “7. [Kimbrell’s] counterclaim for custody is set for trial on....
"!• The lack of personal jurisdiction over John Herbert, however, does not preclude this Court from making a binding adjudication of parentage related to the [mother] and [Kimbrell]. See § 26A7-604(c), Ala.Code 1975.”
(Capitalization in original.)
In her petition for a writ of mandamus, the mother argues that the trial court erred in determining that Kimbrell' was the father of the child. The mother contends that because the trial court invalidated her marriage ' to Kimbrell, it had “validated” her “continued marriage” to Jonathan Herbert. Therefore, the mother argues,' Herbert, by virtue of his being married to the mother at the time of the birth of the child, is the presumed father of the ehild.
Under the unique facts of this case, it appears that, pursuant to the applicable Alabama statute, the child had two presumed fathers. Section 26-17-204 provides:
“(a) A man is presumed to be the father of a child if:
“(1) ‘ he and the mother of the child are married to each other and the child is born during the marriage;
“(2) he and the mother of the child were married to each other and the child is born within BOO days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce;
“(3) before the birth of the child, he and the mother of the child married each other in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or within 300 days after its termination by death, annulment, declaration of invalidity, or. divorce;
“(4) after the child’s birth, he and the child’s mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and:
“(A) he has acknowledged his paternity of the child in writing, such writing being filed with the appropriate court or the Alabama Office of Vital Statistics; or
“(B) with his consent, he is named as the child’s father on the child’s birth certificate; or
“(C) he is otherwise obligated to support the child either under a written voluntary promise or by court order;
“(5) while the child is under the age of majority, he receives the child into his. home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child; or
“(6) he legitimated the child in accordance with Chapter 11 of Title 26.
“(b) A presumption of paternity established under this section may be rebutted only by an adjudication under Article 6 [i.e., § 26-17-601 et seq., Ala. Code 1975], In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man.”
(Emphasis added.)
In her brief before this court, the mother’s stated issue is that the trial court *35 erred in determining Kimbrell to be the child’s presumed father. The mother does not dispute the trial court’s factual findings that form the basis for its determination- that Kimbrell is the child’s presumed father under § 26-17-204(a)(4)(B) and (C) and § 26-17-204(a)(5). In other words, the mother does not dispute that Kimbrell has taken the child into his home, has held the child out as his, child, and has established a significant parental bond with the child, see § 26-17-204(a)(5), or that she and Kimbrell attempted to marry after the child’s birth and that he was both named as the child’s father on the child’s birth certificate and ordered to pay pendente lite child support, see § 26-17-204(a)(4)(B) and (C).' Accordingly, we cannot say that the mother has demonstrated that- the trial court erred in determining that Kimbrell was the child’s presumed father under § 26-17-204(a)(4)(B) and (C) and § 26-17-204(a)(5).
The mother argues that the trial court erred in determining that the presumption in favor of Kimbrell’s paternity was “weightier” than that in favor of Herbert’s paternity. See § 26-17-204(b) (“In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control.”). As part of her argument on this issue, the mother contends that Kim-brell lacks standing to assert a "claim of paternity of the child born of her marriage to another man. In Alabama, a man lacks standing to assert a claim .to establish his paternity of a child if another man who is the child’s presumed father under § 26-17-204 persists, in the. presumption of paternity. § 26-17-607(a), Ala.Code 1975;[1] Ex parte Presse, 554 So.2d 406 (Ala.1989); and A.S. v. M.W., 100 So.3d 1112, 1114 (Ala.Civ.App.2012). The mother asserts in her brief submitted to this, court that Herbert has persisted in the presumption of paternity that arises by,virtue of his continued marriage to the mother.[2] However, in support of her petition for a writ of mandamus, the mother submitted only the trial court’s February 10, 2015, order. In that order, the trial court set forth some testimony provided by Herbert, but it did not mention any facts indicating that Herbert sought to persist in a presumption of paternity.
It is the burden of the mother, as the party seeking extraordinary relief by writ of mandamus, to submit to this court the portions of the proceedings below that support her . arguments made in her petition. See Rule 21(a)(1)(E), Ala. RApp. P. (providing that a petition-for a writ of mandamus shall contain, among other things, “[c]opies of -any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition”). The mother’s failure to include in her petition for a writ of manda *36 mus any information regarding whether Herbert might have persisted in his presumption of paternity prevents this court from reaching her argument concerning Herbert’s alleged persistence in any presumption of paternity in his favor. Our supreme court has explained:
“We deny the writ on the basis that the trial court heard evidence that is not included with the petition for the writ of mandamus. On review by mandamus, the reviewing court must look at only the evidence that was before the trial court. Ex parte Ralston, 519 So.2d 488 (Ala.1987); Ex parte Baker, 459 So.2d 873 (Ala.1984). Conversely, if there was evidence before the trial court that is not presented with the mandamus petition and that evidence might support the trial court’s decision, the petitioner has not met his burden of making a ‘clear showing of error’ by the trial court. Ex parte Jim Skinner Ford, Inc., 435 So.2d 1235, 1237 (Ala.1983). A writ of mandamus is a drastic and extraordinary remedy, and such a writ will be issued only upon a showing that the petitioner has a clear right to relief. Ex parte Humana Medical Gorp., 597 So.2d 670, 671 (Ala.1992).”
Ex parte Moore, 642 So.2d 457, 462 (Ala.1994). Similarly, our supreme court has denied a petition for writ of mandamus when the petitioner did not submit materials necessary to the review of the issue presented to that court:
“Our task in this case is to evaluate the decision of the trial court to determine whether, in exercising its discretion, it exceeded that discretion. To conduct such an evaluation, it is necessary to review the information on which the trial court based its decision.
“... [W]hen we next séek justification for the trial court’s denial of Allianz’s motion for a protective order, we find that Allianz has not provided this Court a copy of the motion or any supporting information as part of its petition. Accordingly, we can find no error in the trial court’s exercise of its discretion regarding the denial of the protective order because we have no evidence that the motion was more than a mere unsupported request for a protective order. Indeed, the sole evidence this Court has of the existence of such a motion is the word ‘denied’ on a single-page order from the trial court that references a motion for a protective order.”
Ex parte Allianz Life Ins. Co. of North America, 25 So.3d 411, 416 (Ala.2008) (denying the petition for a writ of mandamus when the petitioner had failed to provide essential materials).
The mother submitted in support of her petition for a writ of mandamus only the trial court’s February 10, 2015, order, quoted earlier in this opinion, which contains no indication that Herbert had persisted in the presumption of paternity. The mother failed to submit to this court a copy of the transcript of the hearing or any other documentation indicating that Herbert might be persisting in the presumption in favor of his paternity as a presumed father of the child. Accordingly, despite basing her argument on the alleged persistence by Herbert, her husband, in a presumption of paternity, the mother has failed to demonstrate that Kimbrell lacked standing to assert a claim to paternity of the child due to Herbert’s persistence in a presumption of paternity.
Even assuming, however, that this court could conclude that Herbert has persisted in the presumption in favor of his paternity by virtue of his marriage to the mother, that fact would not necessitate the granting of mandamus relief under the *37 facts of this case.[3] The materials submitted by the mother indicate that Kimbrell also has persisted in the presumption in favor of his paternity of the child. The trial court found that Kimbrell, the child’s presumed father under § 26-17-204(a)(4)(B) and (C) and § 26-17-204(a)(5), has persisted in the presumption in favor of his paternity.[4] The trial court determined that because Kimbrell has persisted in the presumption in favor of his paternity, the mother was precluded from challenging his paternity of thé child. See § 26-17-607(a) (providing that “[i]f the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity”). It is clear from that conclusion, and the February 10, 2015, order in its entirety, that the trial court implicitly determined that, as between the two presumed fathers, the presumption in favor of Kimbrell implicated weightier public-policy considerations and, thus, should prevail. See § 26-17-607(b).
To the extent the mother argues that, as between the child’s two presumed fathers, the presumption in favor of Herbert is the “weightier” of the two presumptions, we agree with the implicit holding of the trial court, and we reject that argument.[5] In Ex parte Presse, supra, relied upon by the mother in her brief submitted to this court, the mother in that case and Presse divorced, and the divorce judgment addressed the issue of custody of the minor child born during the parties’ marriage. Later, the mother in that case and her second husband, with whom the mother had had an affair during her marriage to Presse,. sought to have the, mother’s new husband declared the father of the child. The trial court determined that the new husband was the child’s father, and Presse appealed. This court affirmed the trial court’s judgment. See Presse v. Koenemann, 554 So.2d 403 (Ala.Civ.App.1988). Our supreme court reversed this court’s judgment, concluding that the new husband lacked standing to assert his paternity of a child born of the mother’s marriage *38 to another man. Ex parte Presse, 654 So.2d at 418. In so holding, our supreme court, among other things, determined that the public-policy, arguments in favor of determining Presse’s paternity of the child were'“weightier” than those in favor of the new husband; the court stated:
“Moreover, § 26-17-5(b)[, Ala.Code 1976, which has been repealed but which contained identical language to § 26-17-607(b),] provides that, ‘In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control.’ It is quite apparent that the public policy considerations causing Presse, the ’husband of the child’s mother, to be considered as her father, are much “weightier’ than any considerations causing Koenemann (who years later married the child’s mother and received the child into his home) to be considered a ‘presumed father.’ Thus, even if we accepted Koenemann’s argument, that he literally fits within the category of ‘presumed father,’ it is clear that that presumption in his favor would be transcended by the ‘weightier’ presumption in favor of Presse; it is not logical that two men could be presumed to be the child’s father. The presumption in favor of Presse is an ancient one, supported by logic, common sense, and justice.”
Ex parte Presse, 564 So.2d.at 412.
In relying on Ex parte Presse, supra, the mother contends that the presumption in favor of Herbert’s paternity should outweigh the presumption in favor of Kim-brell’s paternity solely on the basis of Herbert’s status as her husband (by virtue of the fact that her marriage to Kimbrell was invalid). However, Ex parte Presse, supra, did not hold that in all circumstances, and regardless of the facts of individual cases, a presumption in favor of the mother’s husband was to prevail over that in favor of another presumed father. Rather, in Ex parte Presse, it was held that the public-policy considerations in favor of Presse’s paternity, which arose from the fact that he was married to the mother when the child was born, under the facts of that case prohibited the new husband from challenging the determination of Presse’s paternity made in the judgment divorcing Presse and the mother.
- The facts of this case are unusual. The mother has sought to terminate the child’s relationship with Kimbrell based on the legal technicality of her own failure to divorce her first husband. The materials submitted to this court by the mother indicate that Kimbrell, the only father the child has ever known, has fought to maintain his relationship with the child. The mother has failed to present any evidence indicating that there.is any relationship between Herbert and the child or that there éxists a logical or public-policy argument in favor of preserving Herbert’s status as the father of her child, who was undisputedly born of her relationship with and purported marriage to Kimbrell, albeit while she remained married to Herbert. It is clear that, regardless of the invalidity of the mother’s marriage to Kimbrell because of the mother’s failure to secure a divorce from Herbert, the familial relationship between, the child and Kimbrell is the weightier consideration -in terms of public policy, logic, and the best interests of the child..
“A writ of mandamus is a drastic and extraordinary . remedy and should be granted only where a party demonstrates that the trial court has abused its discretion and demonstrates that the party has a clear right to-relief.” Williams v. Fogarty, 727 So.2d 831, 833 (Ala.Civ.App.1999). In order to demonstrate a right to relief, the mother was required to demonstrate *39 that the trial court abused its discretion in determining that the presumption in favor of Kimbrell’s paternity should control under the facts of this case; given the facts of this case, we conclude that the mother has failed to do so. The mother has failed to demonstrate a clear legal right to the relief she has requested.
We deny Kimbrell’s motion to dismiss the mother’s petition for a writ of mandamus.
PETITION DENIED.
PITTMAN, THOMAS, MOORE, and • DONALDSON, JJ., concur.

. Section 26-17-607(a) provides:
“Except as otherwise provided in subsection (b), a presumed father may-bring an action to disprove paternity at any time. If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.”

. This court has not been asked to reach the issue whether the presumption set forth in § 26-17-204(a) applies when the mother of the child has committed bigamy or has inadvertently been married to more than one man at the same time. This court’s- opinion should not be read as indicating that the presumption does .apply in favor of the first man she married in such situations. Rather,-given the lack of argument on the issue whether that presumption should apply under the facts of this case, we decline to address the issue and have instead decided, for the purposes of resolving this mandamus petition, to address the issue as it was submitted to this court by the mother.

.Kimbrell, in response to the mother’s petition for a writ of mandamus, submitted to this court much of the evidence presented to the trial court on the issue of paternity and referenced in the trial court’s February 10, 2015, order. Among that documentation was the transcript of the hearing, which indicated that, although Herbert acknowledged that he had not sought to intervene as a party and that he could not possibly be the biological father of the child, he wanted to persist in the presumption of paternity that arose as a result of his marriage to the mother. The mother’s testimony indicated that she had resumed her relationship with Herbert and wanted to relocate with the child to Missouri- to live with Herbert. The mother acknowledged that the child has a loving relationship with Kimbrell. However, the mother admitted that she wanted to deprive Kimbrell of his relationship with the child:
“Q. And one of the things you want not to happen here is [Kimbrell] to have custody of [the child], isn’t it?
“[THE MOTHER]: Yes.
"Q. You want to be able to take [the child] away from [Kimbrell] and him have no contact [sic] and you move to Missouri, isn’t that your goal?
“[THE MOTHER]: Yes.”

. The relevant portion of the February 10, 2015, order actually states that the “plaintiff” has persisted in the presumption of paternity. The mother was the plaintiff below, and Kim-brell was the defendant. It appears that the trial court made a typographical error and intended to state that Kimbrell has persisted ■in his presumption of paternity.

. In some parts of her argument, the mother contends that only Herbert is the child’s presumed father and that Kimbrell is a “third party.” The materials the mother submitted to this court do not support that argument.