THOMPSON, Presiding Judge.
On April 10, 2015, J.O.J. commenced an action in the Madison Juvenile Court (“the juvenile court”) against R.M. (“the mother”) and D.V. In that action, J.O.J. sought to establish his paternity of a child born to the mother in 2012, and he sought an award of custody of the child. The mother moved the juvenile court to dismiss J.OJ.’s action, arguing that the child was born during her marriage to D.V. and, therefore, that J.O.J. lacked standing to assert his paternity. Although the mother did not dispute that J.O.J. was the child’s biological father, she argued that J.O.J, lacked standing to pursue his action because, she alleged, D.V. was persisting in the presumption in favor of his paternity of the child.
The juvenile court conducted an ore ten-us hearing. On May 15, 2015, the juvenile court entered a judgment granting the mother’s motion to dismiss. J.O.J. filed a timely postjudgment motion, and then he filed a notice of appeal. That notice of appeal was held in abeyance until May 26, *727 2015, when the juvenile court denied J.O.J.’s postjudgment motion. See Rule 4(a)(5), Ala. R.App. P. (“A notice of appeal filed after the entry of judgment but before the disposition of all post-judgment motions ... shall be held in abeyance until all post-judgment motions ... are ruled upon; such a notice of appeal shall become effective upon the date of disposition of the last of all such motions.”); and Landry v. Landry, 42 So.3d 755, 757 (Ala.Civ.App.2009) (same).
The Alabama Uniform Parentage Act (“the AUPA”), § 26-17-101 et seq., Ala. Code 1975, governs the establishment of a parent/child relationship under Alabama law. Under the AUPA, several presumptions in favor of a man’s being the father of a child exist:
“(a) A man is presumed to be the father of a child if:
“(1) he and the mother of the child are married to each other and the child is born during the marriage;
“(2) he and the mother of the child were married to each other and the child is born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce;
“(3) before the birth of the child, he and the mother of the child married each other in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce;
“(4) after the child’s birth, he and the child’s mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid
[[Image here]]
“(5) while the child is under the age of majority, he receives the child into his home and openly holds out the ■ child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child; or
“(6) he legitimated the child in accordance with Chapter 11 of Title 26.
“(b) A presumption of paternity established under this section may be rebutted only by an adjudication under Article 6 [i.e., § 26-17-601 et seq., Ala. Code 1975]. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man.”
§ 26-17-204, Ala.Code 1975,
In this case, it is undisputed that, at the time of the child’s birth, the mother was married to D.V. Accordingly, under § 26-17-204(a)(l), D.V. is presumed to be the father of the child.
However, J.O.J. claims that he is also a presumed father under § 26-17-204(a)(5) because, he alleges, he held the child out as his own and provided the child financial and emotional support. J.O.J. argues that the juvenile court erred in failing to allow him to fully present evidence in support of his claims that he is a presumed father of the child and that, under § 26-17-204(b), the presumption in favor of his paternity should outweigh the presumption in favor of D.V.’s paternity under the facts of this case. •
The juvenile court, in reaching its judgment, relied on another section of the AUPA that provides:
*728 “(a) Except as otherwise provided in subsection (b), a presumed father may bring an action to disprove paternity at any time. If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individ/aal may maintain an action to disprove paternity.
“(b) A presumption of paternity under this section may be rebutted in an appropriate action only by clear and convincing evidence. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man,”
§ 26-17-607, Ala.Code 1975 (emphasis added). The Alabama Comment to § 26-17-607 notes that section is consistent with our appellate courts’ holdings in Ex parte Presse, 554 So.2d 406 (Ala.1989), and later cases relying oñ Presse.
In Ex parte Presse, supra, our supreme court held that, under the AUPA, a man may not bring an action to establish his paternity of a child born during the child’s mother’s marriage to another man. In that case, the child’s mother had an affair with Lynn Koenemann while she was married to Norman Presse. The child was born, and the mother and Presse lived together for several years until their divorce. Later, the mother married Koene-mann, and she and Koenemann sought to have Koenemann’s paternity of the child established. The trial court found in favor of the mother and Koenemann, and this court affirmed. Our supreme court reversed, holding that a man lacks standing to initiate a paternity action related to a child born during the mother’s marriage to another man if the mother’s husband persists in the presumption in favor of his paternity. In reaching its holding in that case, our supreme court relied on the principle of preserving the sanctity of family relationships, and it concluded that the presumption in favor of the mother’s husband was “weightier” than that in favor of the child’s biological father, assuming that the mother’s husband persisted in the presumption in favor of his paternity of the child. 554 So.2d at 412. More significantly, the court concluded that Presse’s challenge to Koenemann’s standing to assert his claim should have been upheld. Ex parte Presse, 554 So.2d at 414.
As J.O.J. argues before this court, J.O.J. was entitled to a hearing on the issue of whether D.V. persisted in his presumption of paternity. D.B. v. A.K., 93 So.3d 946, 948-49 (Ala.Civ.App.2012); see also W.D.R. v. H.M., 897 So.2d 327, 331 (Ala.Civ.App.2004) (holding that when the evidence does not demonstrate whether the mother’s husband had persisted in his presumption of paternity, the juvenile court must hold a hearing on that issue); R.D.B. v. A.C., 27 So.3d 1283, 1287 (Ala.Civ.App.2009) (holding that, because the biological father’s “allegations .'.. call[ed] into question whether the [mother’s husband] persisted] in his presumption of paternity,” the juvenile court was required to conduct a hearing on whether the mother’s husband had persisted in his presumption of paternity); and J.O.J. v. R.R., 895 So.2d 336 (Ala.Civ.App.2004) (holding that, when there is no evidence regarding whether the mother’s husband wanted to persist in or disavow the presumption of paternity, the juvenile court must hold a hearing on that issue to determine whether the biological father has standing to assert a paternity claim).
However, in this case, unlike in the cases, cited above, the juvenile court conducted an ore tenus hearing to consider the issue of whether D.V. persisted in the *729 presumption in favor of his paternity. At the ore- tenus hearing, D.V. appeared and testified that he wished to persist in the presumption of his paternity of the child.
J.O.J. questioned the veracity of D.V.’s testimony, but the juvenile court limited the amount of questioning on that issue. The evidence presented at the hearing indicates that D.V. understood that he was not the biological father of the child. However, D.V. testified that he took the mother to her prenatal visits and was present for the child’s birth. D.V. testified that he has provided financial support for the child and has occasionally, although it appears briefly, lived with the mother and the child. D.V. testified that he had performed such parenting tasks as bathing the child, changing diapers, and waking in the middle of the night with the child. It appears that there have been periods during which D.V. and the mother have separated, and D.V. stated that, at the time of the hearing, he was unaware of where the mother lived with the child. D.V. testified that, because he works two hours from where the mother lives and attends school, he typically sees the mother and the child on weekends. D.V. stated that he did not believe J.O.J. had treated the child appropriately and that he, D.V., understood the financial and other obligations attendant to his persisting in the presumption in favor of his paternity. D.V. testified that, although at the time of the hearing the child was in Kenya visiting relatives, he intended to continue to be a father to the child when the child returned from Kenya.
J.O.J. argues that he was entitled to present additional evidence indicating that, before the ore tenus hearing, D.V. had not persisted in the presumption in favor of his paternity and that J.O.J. had provided for the child and, therefore, was a presumed father of the child under § 26-17-204(a)(5). J.O.J. cites A.S. v. M.W., 100 So.3d 1112 (Ala.Civ.App.2012), in support of his argument that the juvenile court erred in refusing to allow him to present additional evidence. In A.S. v. M.W., supra, the Henry County Department of. Human Resources initiated a dependency action, and, as a result, the juvenile court in that case entered dependency judgments awarding custody of one of the mother’s children to that child’s grandparents and awarding custody of the mother’s other two children to M.W., their biological father. The mother argued that the juvenile court had erred in awarding custody of the two children to M.W. because, she argued, those children were born during her marriage to another man, J.L.W., and, therefore, that M.W. lacked standing under Présse, supra, to seek to be declared their father and to obtain custody of them. The mother submitted to the juvenile court her own affidavit stating that J.L.W. persisted in the presumption in favor of his paternity of the children. J.L.W., however, did not appear' in the action, and he did not present evidence indicating that he wanted to persist in the presumption in favor of his paternity. This court stated:
“The evidence presented at the dispo-sitional hearing showed, without dispute, that the mother and J.L.W. separated shortly after their marriage and that the mother began an enduring relationship with M.W. thereafter without informing him of her continuing marriage to J.L.W. M.W. undisputedly fathered the children as determined by the genetic testing. J.L.W. has never met the children, has never supported the children, and has never asserted his parental rights to the children, including in the underlying proceedings. M.W. signed an affidavit of paternity and is listed as the father on the children’s birth certificates. He has held out the children as his own and has supported them from the time of their births. The children *730 refer to M.W. as ‘Daddy.’ That evidence could have clearly convinced the juvenile court that J.L.W. was not persisting in his presumption of paternity, thereby providing M.W. standing to properly invoke the subject-matter jurisdiction of the juvenile court over the issue of the children’s paternity.”
AS. v. M.W., 100 So.3d at 1114. This court held, however, that the juvenile court had erred in failing to join J.L.W. as an indispensable party, and, therefore, this court dismissed the appeal. Id.
Thus, AS. v. M.W., supra, was not decided on the issue of whether the husband of the mother in that case persisted in his presumption of paternity. The portion of the opinion quoted above indicates that, because J.L.W., the mother’s husband, did not appear at the hearing or in the action, the juvenile court in that case considered circumstantial evidence other than the statements of the husband of the mother in that case in order to reach its judgment. In this case, however, D.V., the mother’s husband, specifically testified that he wanted to persist in his presumption of paternity.
J.O.J. also argues that Ex parte Kim-brell, 180 So.3d 30 (Ala.Civ.App.2015), supports his arguments. In that case, the mother and Denny Kimbrell married within seven months of the birth of their child. During a divorce proceeding, the mother sought to set aside a settlement agreement into which she and Kimbrell had entered on the basis that she had discovered that she had never divorced her first husband, Jonathon Herbert. The mother had not seen Herbert in almost 10 years at the time the child was born. The mother argued, however, that her marriage to Kimbrell was void and did not support a finding that Kimbrell could be the child’s presumed father by virtue of his being married to the child’s mother. Herbert appeared at the ore tenus hearing and testified that he had been estranged from the mother since their separation seven years earlier and that he had no involvement in the life of the child; there was no indication that Herbert sought to persist in his presumption of paternity.
The trial court in that case determined that the presumption in favor of Kimbrell’s paternity was weightier than that in favor of Herbert’s paternity, and this court denied the mother’s petition for mandamus relief.
“Even assuming, however, that this court could conclude that Herbert has persisted in the presumption in favor of his paternity by virtue of his marriage to the mother, that fact would not necessitate the granting of mandamus relief under the facts of this case. The materials submitted by the mother indicate that Kimbrell also has persisted in the presumption in favor of his paternity of the child. The trial court found that Kimbrell, the child’s presumed father under § 26-17-204(a)(4)(B) and (C) and § 26 — 17—204(a)(5), has persisted in the presumption in favor of his paternity. The trial court determined that because Kimbrell has persisted in the presumption in favor of his paternity, the mother was precluded from challenging his paternity of the child. See § 26-17-607(a) (providing that ‘[i]f the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity). It is clear from that conclusion, and the February 10, 2015, order in its entirety, that the trial court implicitly determined that, as between the two presumed fathers, the presumption in favor of Kimbrell implicated weightier public-policy consider *731 ations and, thus, should prevail. See § 26-17-607(b).
“To the extent the mother argues that, as between the child’s two presumed fathers, the presumption in favor of Herbert is the “weightier’ of the two presumptions, we agree with the implicit holding of the trial court, and we reject that argument.”
180 So.3d at 36-37 (footnotes omitted). The court then discussed Ex parte Presse, supra, and quoted from that case as follows:
‘“Moreover, § 26-17-5(b)[, Ala. Code 1975, which has been repealed but which contained identical language to § 26 — 17—607(b),] provides that, “In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control.” It is quite apparent that the public policy considerations causing Presse, the husband of the child’s mother, to be considered as [the child’s] father, are much “weightier” than any considerations causing Koenemann (who years later married the child’s mother and received the child into his home) to be considered a “presumed father.” Thus, even if we accepted Koene-mann’s argument that he literally fits within the category of “presumed father,” it is clear that presumption in his favor would be transcended by the “weightier” presumption in favor of Presse; it is not logical that two men could be presumed to be the child’s father. The presumption in favor of Presse is an ancient one, supported by logic, common sense, and justice.’
“Ex parte Presse, 554 So.2d at 412.
“In relying on Ex parte Presse, supra, the mother contends that the presumption in favor of Herbert’s paternity should outweigh the presumption in favor of Kimbrell’s paternity solely on the basis of Herbert’s status as her husband (by virtue of the fact that her marriage to Kimbrell was invalid). However, Ex parte Presse, supra, did not hold that in all circumstances, and regardless of the facts of individual cases, a presumption in favor of the mother’s husband was to prevail over that in favor of another presumed father. Rather, in Ex parte Presse, it was held that the public-policy considerations in favor of Presse’s paternity, which arose from the fact that he was married to the mother when the child was born, under the facts of that case prohibited the new husband from challenging the determination of Presse’s paternity made in the judgment divorcing Presse and the mother.”
Ex parte Kimbrell, 180 So.3d at 38.
J.O.J. contends that he should have been afforded the same opportunity as Kimbrell in Ex parte Kimbrell to present evidence demonstrating that a presumption in favor of his paternity was weightier than the presumption in favor of D.Y.’s paternity, which is based on D.V.’s being married to the mother. J.O'.J; does not allege that he and the mother attempted to marry. Rather, he alleges that the juvenile court should have received additional evidence, concluded that he was also entitled to a presumption of paternity, and then engaged in weighing the comparative merits of the two paternity presumptions, as the courts did in Ex parte Kimbrell.
However, Ex parte Kimbrell, supra, was unique in that the mother in- that case had mistakenly believed that she had divorced Herbert before she married Kimbrell. Under the circumstances of that case, the courts refused the mother’s request to conclude that there was no presumption in favor of Kimbrell because her marriage to Kimbrell had been void. Kimbrell does *732 not stand for the proposition that the presumption in favor of the paternity of the mother’s husband will be deemed less weighty than that of the child’s biological father, except, perhaps, under the most egregious circumstances.
Although we are not unsympathetic to the position in which J.O.J. finds himself, the number of cases that have relied on Presse indicate that, sadly, J.O.J. is not in an unusual situation. J.OJ.’s argument boils down to an assertion that he should be allowed to present additional evidence regarding whether he or D.V. has been a better parent to the child. However, Ex parte Presse establishes that because D.V. has stated that he wishes to continue to act as a father to the child, and because evidence indicates that he has assumed some parental duties to the child, J.O.J. lacks standing to assert his paternity of the child. See also Ex parte S.E., 125 So.3d 720, 721 (Ala.Civ.App.2013) (“[I]f the presumed father wishes to persist in his presumption of paternity, no one may bring an action to disprove his paternity or to establish paternity in another man.”). Given the facts of this case and the arguments asserted on appeal, we cannot say that J.O.J. has demonstrated that the juvenile court erred in denying his request to present additional evidence in this matter.
J.O.J. also argues that the juvenile court erred in denying his postjudgment motion without conducting a hearing on that motion. Generally, when a party requests a hearing on a postjudgment motion, a trial court errs if it denies that request for a hearing. Isbell v. Rogers Auto Sales, 72 So.3d 1258, 1260-61 (Ala.Civ.App.2011). However, if the failure to conduct a hearing on a postjudgment motion does not affect the movant’s substantial rights, that failure can be deemed to be harmless error. Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989) (citing Rule 45, Ala.R.App. P.). “Harmless error occurs, within the context of a Rule 59(g)[, Ala. R. Civ. P., postjudgment] motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant....” Id.
In this case, we have held that J.O.J. failed to demonstrate that the juvenile court erred in denying his request to present additional evidence at the ore tenus hearing and in entering a judgment dismissing his claims. Accordingly, any error the juvenile court made in denying J.OJ.’s postjudgment motion without conducting a hearing was harmless error. Greene v. Thompson, supra.
AFFIRMED.
PITTMAN and DONALDSON, JJ., concur.
MOORE, J., dissents, with writing, which THOMAS, J., joins.