REL:  March 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

———————————————

### CL-2022-1069

———————————————

### C.L.R.

### v.

### M.B.M. and R.M.

### Appeal from Marshall Juvenile Court
### (CS-22-900023)

MOORE, Judge.

C.L.R. ("the former husband") appeals from a summary judgment entered by the Marshall Juvenile Court ("the juvenile court") in an action to establish the paternity of G.M. ("the child"), a child born during the

marriage of M.B.M. ("the mother") to R.M. ("the current husband"). We reverse the judgment and remand the case with instructions.

Background and Procedural History

On February 18, 2022, the former husband filed a complaint requesting that the juvenile court establish his paternity of the child and render a custody and child-support determination relating to the child. In the complaint, which named only the mother as the defendant, the former husband alleged under oath that he and the mother had been married from September 29, 2014, to January 29, 2015. The former husband further alleged that the child was conceived by the parties during their postmarital relationship and was born on April 28, 2021. At the time of the birth of the child, the mother was married to the current husband, who was designated as the father of the child on her birth certificate. The mother informed the former husband that he was actually the biological father of the child approximately seven months after the birth of the child. The former husband met the child in November 2021, and, following that meeting, he had many unsupervised visits with the child and paid the mother weekly child support.

On March 18, 2002, the mother filed an answer to the complaint, denying all the material allegations of the complaint. On March 29, 2022, the former husband filed a motion for genetic testing. The juvenile court originally granted that motion on March 30, 2022, but it subsequently set aside the order granting the motion the next day after the mother objected. On April 27, 2002, the mother submitted to the juvenile court an affidavit of the current husband. In his affidavit, the current husband stated that he and the mother had conceived the child, that he had married the mother on April 17, 2021, 11 days before the birth of the child, that the child carried his last name, that he had executed a formal acknowledgment of paternity of the child at the hospital following the birth of the child, that he had taken the child into his home, that he was the presumed father of the child, and that he would persist in his presumption of paternity until his death.

The former husband responded to the current husband's affidavit by filing a motion requesting that the juvenile court allow him to amend the complaint. In his motion, the former husband argued that he could have the acknowledgment of paternity executed by the current husband

rescinded through the underlying paternity action. The former husband agreed that the current husband was a presumed father of the child, but the former husband asserted that he was also a presumed father of the child by virtue of his having established a father-child relationship with the child, having held the child out as his own, having been referred to as the father of the child in some medical records, and having provided the child with financial support; he also asserted that was persisting in his presumption of paternity. The former husband contended that, in the situation as it existed, the juvenile court should resolve the conflicting presumptions of paternity and adjudicate which of the two men is the legal father of the child.

On May 12, 2022, the juvenile court entered an order denying the request for genetic testing and ordering the former husband to amend the complaint to add the current husband as a defendant. The order then states:

> "Once added and served, [the current husband] may request a hearing on the issue of whether or not [the current husband] has persisted in his paternity of [the child]. If the Court finds that [the current husband] has persisted in his paternity, the case shall be dismissed. However, if the Court finds that [the

4

> current husband] has not persisted in his paternity of [the child], [genetic testing] shall be ordered at that time."

On May 20, 2022, the former husband amended his complaint to add the current husband as a defendant and to verify under oath the factual allegations setting forth his version of the conception of the child and the establishment of his relationship with the child, who, he said, he had brought into his home until the mother stopped allowing him to visit with the child. Additionally, the former husband asserted that the mother had informed him that the current husband had had a vasectomy before the conception of the child. The former husband also requested that the juvenile court rescind the acknowledgment of paternity executed by the current husband.

On June 9, 2022, the current husband filed an answer denying the material allegations of the amended complaint and asserting his claim to the paternity of the child. On August 15, 2022, the mother and the current husband jointly filed a motion to set the case for trial or, in the alternative, to dismiss the case. The former husband filed a response to the motion; the response contained exhibits, including a badge issued by a local hospital identifying him as a "parent" of the child, text messages

from the mother acknowledging his paternity of the child and agreeing to genetic testing, and photographs of him caring for the child. The former husband also filed his affidavit in which he set forth that, after he and the mother divorced, they had maintained a relationship and had conceived the child, a fact that he did not know until November 2021 when he was so informed by the mother, who, he said, also told him that it was impossible for her to have conceived the child with the current husband. The former husband attested that, after learning of his paternity, he had taken the child into his care, had held the child out as his own natural child, had paid the mother child support, had visited the child at the hospital, and had taken the child into his own home until May 25, 2022. The former husband maintained that he was persisting in his paternity of the child.

On September 21, 2022, the juvenile court conducted a hearing on the motion to dismiss. At the start of the oral argument, counsel for the current husband acknowledged that the motion to dismiss was, in substance, a motion for a summary judgment. The parties then proceeded to argue the merits of the motion for a summary judgment.

The juvenile court entered a judgment on September 29, 2022 ("the final judgment"), providing "[c]ase is hereby dismissed." The former husband filed a postjudgment motion to alter, amend, or vacate the final judgment on October 5, 2022. The juvenile court held a hearing on the postjudgment motion on October 12, 2022; on that same date, before awaiting a ruling on the postjudgment motion, the former husband filed a notice of appeal of the final judgment, which notice was held in abeyance until the date of disposition of the postjudgment motion. See Rule 4(a)(5), Ala. R. App. P. The notice of appeal became effective on October 19, 2022, when the postjudgment motion was denied by operation of law. See Rule 1(B), Ala. R. Juv. P.; and J.J. v. R.R., 159 So. 3d 84, 85 (Ala. Civ. App. 2014) (holding that "CS" cases are governed by the Alabama Rules of Juvenile Procedure, including Rule 1(B) providing that a postjudgment motion may be pending for only 14 days unless that period is extended in accordance with the rule). The juvenile court purported to enter an order denying the postjudgment motion on November 7, 2022, but that order was a nullity. See J.S. v. S.W., 702 So. 2d 169, 171 (Ala. Civ. App. 1997).

## Issue

Although the final judgment from which this appeal arises could be interpreted as granting a motion to dismiss, the final judgment actually granted the mother and the current husband's motion for a summary judgment because the juvenile court considered evidence outside of the pleadings. See Rule 12(b), Ala. R. Civ. P. (providing that, when a court considers evidence outside of the pleadings when ruling on a motion to dismiss, the motion is converted into a motion for a summary judgment); D.K. v. S.M.S., 297 So. 3d 466, 469 (Ala. Civ. App. 2019) (applying the reasoning underlying Rule 12(b) in a juvenile case). Thus, the issue on appeal is whether the juvenile court erred in entering the final judgment against the former husband on his claim to establish the paternity of the child.

Standard of Review

An appellate court reviews a summary judgment de novo. S.J.S. v. B.R., 949 So. 2d 941, 944 (Ala. Civ. App. 2006). A summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. The burden is on the party moving for a summary judgment to make a prima facie showing that he or she is entitled to a summary judgment by presenting evidence that, if uncontroverted at trial, would entitle the moving party to a judgment as a matter of law. See Ex parte General Motors Corp., 769 So. 2d 903, 909 (Ala. 1999).

Analysis

Section 26-17-204(a)(1), Ala. Code 1975, provides, in pertinent part, that "[a] man is presumed to be the father of a child if ... (1) he and the mother of the child are married to each other and the child is born during the marriage." In this case, the child was born 11 days after the mother married the current husband, making him a presumed father of the child,

as acknowledged throughout this litigation by the former husband. Section 26-17-607(a), Ala. Code 1975, provides, in pertinent part: "If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity."

Having been advised through the pleadings and motions of the parties of the status of the current husband as a presumed father under § 26-17-204(a)(1), the juvenile court entered an order on May 12, 2022, indicating that, once the current husband was added as a defendant in the paternity proceedings and properly served, the juvenile court would conduct a hearing to determine whether the current husband was persisting in his claim to the paternity of the child. The juvenile court indicated in the May 12, 2022, order that, if the current husband was persisting in his claim to paternity, it would dismiss the case. The current husband subsequently appeared in the case and filed a verified answer in which he indicated that he was persisting in his claim of paternity of the child, affirming the statement that he had made in his affidavit that had been submitted to the juvenile court on April 27, 2022.

In their motion for a summary judgment filed on August 15, 2022, the mother and the current husband cited the May 12, 2022, order, referred the juvenile court to the verified answer filed by the current husband, and requested, among other things, that the juvenile court dismiss the case on the ground that it was uncontroverted that the current husband was persisting in his claim of paternity of the child. The mother and the current husband did not cite any legal authority to support the dismissal, but it is apparent that they were relying on § 26-17-607(a).

In Ex parte Kimbrell, 180 So. 3d 30 (Ala. Civ. App. 2015), this court recognized that, when a child has two or more presumed fathers, § 26-17-607(a) does not apply. In that case, Amanda Kimbrell married John Herbert in 1996. In 1997, Amanda left Herbert without divorcing him. In 2004, she began a relationship with Denny Kimbrell. On February 24, 2006, she gave birth to a child. Denny was named as the father of the child on the birth certificate and raised the child with Amanda. Denny and Amanda purported to marry one another seven months after the birth of the child, but the marriage was invalid because Amanda was still

11

married to Herbert. In 2014, Amanda and Denny commenced a divorce action, which was converted into an annulment action due to the invalidity of their purported marriage. Denny sought a paternity determination regarding the child born of his and the mother's relationship. The Walker Circuit Court determined that Denny was a presumed father of the child "'pursuant to Sections 26-17-204(a)(4)(B) & (C) and 26-17-204(a)(5), Ala. Code 1975,'" 180 So. 3d at 33, who was persisting in his status as the legal father of that child and that, pursuant to § 26-17-607(a), Amanda could not dispute his claim. Amanda filed a petition for the writ of mandamus seeking to have the paternity determination vacated.

On mandamus review, this court noted that, "[u]nder the unique facts of this case, it appears that, pursuant to the applicable Alabama statute, [§ 26-17-204, Ala. Code 1975,] the child had two presumed fathers." 180 So. 3d at 34. This court emphasized that, when there are two presumed fathers, § 26-17-204(b), Ala. Code 1975, governs the determination of which of the two men shall be adjudicated the legal father. Section 26-17-204(b) provides, in pertinent part: "In the event

two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control."[1] Amanda asserted that, pursuant to § 26-17-607(a), Denny could not maintain the paternity action because Herbert was persisting in his claim of paternity. This court rejected that argument, concluding that, even if the evidence had shown that Herbert was persisting in his claim of paternity, that fact alone would not prevent Denny from maintaining the paternity action because Denny was also a presumed father who was persisting in his status as the legal father of the child at issue. This court held that, in circumstances in which two presumed fathers are persisting in their claims to paternity of a child, the trial court must apply § 26-17-607(b) to resolve the dispute. This court recognized that the Walker Circuit Court had cited § 26-17-607(a) in concluding that Amanda could not dispute Denny's paternity of the child at issue, but we determined that, in substance, the Walker Circuit Court had actually, and correctly, applied § 26-17-204(b) by determining

---

[1]Section 26-17-607(b), Ala. Code 1975, contains language identical to the language in § 26-17-204(b); thus, our analysis of § 26-17-204(b) applies equally to § 26-17-607(b).

that Denny, who had been the only father the child at issue had ever known, had a weightier claim to paternity under the circumstances.

In <u>D.I. v. I.G.</u>, 262 So. 3d 651, 659 (Ala. Civ. App. 2018), this court, citing <u>Ex parte Kimbrell</u>, explained that "the field of operation of § 26-17-204(b)[, Ala. Code 1975,] continues to be, as always, the determination of the weightier presumption of paternity <u>when the facts yield two or more potential presumed fathers</u>." (Emphasis added.) Likewise, in <u>Ex parte A.A.</u>, 342 So. 3d 209, 214-15 (Ala. Civ. App. 2021), this court, again relying on <u>Ex parte Kimbrell</u>, explained that § 26-17-607(a) applies only to prevent the maintenance of a paternity action when a child has only one presumed father who persists in his status as the legal father of the child. When, however, more than one man qualifies as a presumed father, § 26-17-204(b) requires a juvenile court to allow the paternity action to proceed for the purpose of determining which of the two presumed fathers shall be adjudicated the legal father of the child based on the factors set forth therein. <u>See also</u> <u>H.A.A. v. B.J.J.</u>, [Ms. 2200928, June 10, 2022] ___ So. 3d ___, ___ (Ala. Civ. App. 2022) (recognizing that, when two men are both presumed fathers, § 26-17-204(b) applies).

Admittedly, this court has not consistently followed the reasoning in Ex parte Kimbrell, see, e.g., R.D. v. S.S., 309 So. 3d 146 (Ala. Civ. App. 2020) (requiring biological father of child at issue to prove that husband of mother was not persisting in a claim of paternity before allowing evidentiary proceeding under § 26-17-204(b)); J.O.J. v. R.M., 205 So. 3d 726 (Ala. Civ. App. 2015) (denying appellant an opportunity to prove his status as a presumed father and to an evidentiary hearing under § 26-17-204(b) on the ground that the husband of the mother in that case was persisting in his status as legal father of child at issue), but the weight of authority provides that, in cases involving two or more presumed fathers, § 26-17-204(b) controls and not § 26-17-607(a). Consequently, the fact that one presumed father persists in his claim of paternity does not prevent another presumed father from maintaining a paternity action.

In their motion for a summary judgment, the mother and the current husband presented uncontroverted evidence indicating that the current husband was a presumed father of the child who was persisting in his claim to the legal status of the father of the child, but that uncontroverted evidence does not necessarily entitle them to a dismissal

of the underlying paternity action as a matter of law. If the former husband is also a presumed father, under <u>Ex parte Kimbrell</u> and its progeny, the juvenile court would be required to allow the paternity action to proceed to conduct an evidentiary hearing and make a paternity adjudication in accordance with § 26-17-204(b).

The mother and the current husband did not present any evidence designed to prove that the former husband is not a presumed father of the child. On the other hand, the former husband maintained that he should be considered a presumed father of the child under § 26-17-204(a)(5), Ala. Code 1975, which provides, in pertinent part:

> "(a) A man is presumed to be the father of a child if:
>
> "....
>
> "(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child ...."

The former husband presented evidence indicating that, after learning of his biological connection to the child, he had visited with the child

16

unsupervised in his home, had publicly acknowledged his paternity of the child, and had provided the child with care, emotional support, and financial support. That evidence, which was not disputed by the mother or the current husband, could establish that the former husband is also a presumed father of the child. Thus, we hold that the juvenile court should have afforded the former husband an evidentiary hearing for the purposes of establishing his status as a presumed father of the child and, if successful, for litigating whether he or the current husband should be adjudicated the legal father of the child based on the factors set forth in § 26-17-204(b). The juvenile court committed reversible error by dismissing the case instead of following that procedure.

We find no other valid legal basis in the record for affirming the summary judgment. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So. 2d 1013, 1020 (Ala. 2003) (permitting an appellate court to "affirm the trial court['s judgment] on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court"). The mother and the current husband did not assert that they were

17

entitled to a judgment as a matter of law based on the status of the current husband as an acknowledged father. Even if they had, that argument would not have prevailed. An acknowledgment, in compliance with the form set forth in § 26-17-302 and § 26-17-312, Ala. Code 1975,[2]

---

[2]Section 26-17-302, Ala. Code 1975, provides:

"(a) An acknowledgment of paternity must:

"(1) be in a record filed with the Alabama Office of Vital Statistics;

"(2) be signed, and notarized, under penalty of perjury by the mother and by the man seeking to establish his paternity;

"(3) state that the child whose paternity is being acknowledged:

"(A) does not have a presumed father or the man executing the acknowledgment is the presumed father; and

"(B) does not have another acknowledged or adjudicated father;

"(4) state whether there has been genetic testing and, if so, that the acknowledging man's claim of paternity is consistent with the results of the testing; and

when executed by both the mother and the acknowledged father is "considered a legal finding of paternity" of the child when properly filed with the Alabama Office of Vital Statistics. See § 26-17-305, Ala. Code 1975. The mother and the current husband failed to present any evidence indicating that the form complied with the applicable statutes, that the mother had executed the acknowledgment in addition to the current

---

> "(5) state that the signatories understand that the acknowledgment shall be considered a legal finding of paternity of the child and that a challenge to the acknowledgment is permitted only as provided in this chapter.
>
> "(b) A presumed father may sign an acknowledgment of paternity which must be notarized."

Section 26-17-312, Ala. Code 1975, provides:

> "(a) To facilitate compliance with this article, the Alabama Department of Human Resources shall prescribe forms for the acknowledgment of paternity. The affidavit shall include the Social Security number and current address of each parent, a listing of the rights and responsibilities of acknowledging paternity, including the duty to financially support the child, and instruction for filing the affidavit with the Office of Vital Statistics.
>
> "(b) A valid acknowledgment of paternity is not affected by a later modification of the prescribed form."

19

husband, or that the acknowledgment had been properly filed, so the record contains no evidence indicating that the acknowledgment, which, we note, was not filed with the juvenile court, has any legal effect. Moreover, the Alabama Uniform Parentage Act, § 26-17-101 et seq., Ala. Code 1975, does not provide that an acknowledgment of paternity precludes another man from disproving the paternity of an acknowledged father. To the contrary, a party that is not a signatory to the acknowledgment "may maintain a proceeding at any time after the effective date of the acknowledgment if the court determines that it is in the best interest of the child." § 26-17-609(b), Ala. Code 1975. Under the circumstances of this case, we cannot say that the acknowledgment entitles the mother and the current husband to a judgment as a matter of law.

## Conclusion

For the foregoing reasons, the final judgment entered by the juvenile court is reversed and the case is remanded to the juvenile court. On remand, the juvenile court is instructed to vacate the final judgment, to conduct an evidentiary hearing to determine whether the former

20

husband is a presumed father of the child and, if so, whether he or the current husband should be adjudicated the legal father of the child in accordance with § 26-17-204(b), and to take such other actions as are consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Edwards, Hanson, and Fridy, JJ., concur.